OPINION
Teddy J. Bair, defendant-appellant, appeals his conviction for felonious assault in violation of R.C. 2903.11 with a repeat violent offender specification pursuant to RC. 2929.01(EE). Defendant-appellant assigns a total of six assignments of error for this court's review.
In the early morning hours of August 17, 1996, the appellant was involved in an altercation with Michael Johnson on the front lawn of Johnson's mother's residence at 3716 W. 139th Street in Cleveland, Ohio. At the time the appellant came upon the scene of the incident in question, Michael Johnson was already involved in a physical altercation with his sister, Pam Johnson, who, at the time, was also the girlfriend of the appellant. Witnesses at the scene testified that Michael Johnson had applied a "bear hug" type embrace to his sister Pam Johnson after she had struck him about the head one or more times and that he was attempting to restrain her in this manner on the ground when the appellant arrived. The appellant, after surveying the situation, slipped on a pair of gloves and then proceeded to repeatedly strike Michael Johnson, primarily in the back of the head, until such time that he was pulled off Johnson by a male bystander. The appellant, Pam Johnson and her two children all fled the scene prior to the arrival of the Cleveland Police Department and an emergency medical vehicle. Michael Johnson refused transport to the hospital, but later accepted a ride with a neighbor to Fairview Hospital where he was treated and released for multiple lacerations and contusions.
On September 30, 1996 the appellant was indicted by the Cuyahoga County Grand Jury on one count of felonious assault, R.C.2903.11, with a repeat violent offender specification. Following a five day jury trial, which began on April 25, 1997, appellant was found guilty of felonious assault. Appellant had already stipulated to the repeat violent offender specification. On June 17, 1997 the trial court sentenced appellant to seven years incarceration for felonious assault. In addition, the trial judge imposed a four year sentence, to run consecutively with the felonious assault term, on the repeat violent offender specification, making the sentence a total of eleven years. No representative from the office of the county prosecutor was present at the sentencing hearing. The State could have conceivably filed a cross-appeal on the issue of the total duration of the term of incarceration, but chose not to do so.
On July 18, 1997 appellant filed a timely notice of appeal from the verdict and the sentencing of the trial court.
Appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN IMPOSING AN ADDITIONAL FOUR YEAR SENTENCE FOR A REPEAT VIOLENT OFFENDER SPECIFICATION.
Appellant argues in his first assignment of error that the trial court erred in sentencing him to an additional four year term of incarceration, pursuant to the repeat violent offender specification included in the indictment, where the trial court had not already imposed the maximum sentence permitted by law for the underlying offense. The underlying offense in this instance, felonious assault, is a second degree felony punishable by a prison term of up to eight years. R.C. 2929.14 (A)(2). R.C.2929.14(D)(2)(b) provides that a sentencing court may not impose an additional sentence pursuant to a repeat violent offender specification unless it has already imposed the maximum sentence for the underlying offense:
 (b) If the court imposing a term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years * * *. (Emphasis added.)
In the case sub judice, the trial court imposed a seven year sentence for the underlying offense of felonious assault where the maximum sentence provided for by law was eight years. Therefore, it was error for the trial court to attempt to add an additional four years to the sentence for the repeat violent offender specification without first sentencing the appellant to the maximum term of incarceration allowed by law for violation of R.C. 2903.11.
Given this court's holding regarding the imposition of the additional four year prison term on the repeat violent offender specification by the trial court, it is not necessary to address appellant's additional contention that the trial court failed to make a finding, as required by R.C. 2941.149 (B), that the appellant was in fact a repeat violent offender and/or whether the felonious assault in question "involved an attempt to cause serious physical harm to a person or * * * resulted in serious physical harm to a person." R.C. 2929.01(EE)(1) mandates that such a finding as to actual or intended physical harm be made prior to a final determination as to an offender's repeat violent offender status. Regardless of whether the appellant had been found by the trial court to be a repeat violent offender, the trial court would have been prohibited from imposing an additional prison term premised on the repeat violent offender specification because the appellant had not been sentenced to the longest possible prison term for the underlying offense of felonious assault.
Appellant's first assignment of error is well taken.
Appellant's second assignment of error states:
 II. THE APPELLANT WAS DENIED HIS RIGHT TO CONFRONT WITNESSES AGAINST HIM AND TO PRESENT WITNESSES IN HIS FAVOR GUARANTEED TO HIM BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.[1]
During the course of the trial, the appellant claims to have been denied his right to call witnesses who purportedly would have testified that some of the state's witnesses were being coerced or threatened by the victim, Michael Johnson, prior to their testimony at trial. Specifically, appellant attempted to introduce the testimony of Robert Salvatore, who allegedly happened to overhear a conversation between witnesses in this case, wherein both witnesses stated that they feared for their well-being from both Michael Johnson and his mother, Betty Johnson, if they provided testimony which did not substantiate Michael Johnson's version of events on the night in question. The trial court also refused to allow the testimony of Lisa Klinger, one of the participants in the above-referenced conversation overheard by Salvatore, on the issue of Pam Johnson's statements to Klinger to the effect that Johnson had lied to police officers during the course of the investigation of this matter. Klinger also allegedly would have testified that Pam Johnson had related to her a version of events that was inconsistent with her testimony at trial.
We begin our analysis with an examination of Evid.R. 401, which defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides "[a]ll relevant evidence is admissible * * * Evidence which is not relevant is not admissible." Evid.R. 403(A) requires that evidence which is nonetheless relevant be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
The trial court is vested with sound discretion to rule on the admission or exclusion of evidence based on relevance, and these rulings will not be overturned absent an abuse of discretion.Renfro v. Black (1990), 52 Ohio St.3d 27. The term "abuse of discretion" connotes more than error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. The record in the instant case is clear that the trial court did not believe that the testimony of either Salvatore or Klinger was relevant because it did not tend to make the existence of any fact of consequence more or less probable, and its probative value was outweighed by its prejudicial effect.
Both Salvatore and Klinger would have purportedly offered testimony to the effect that Pam Johnson's testimony was untruthful and given under duress. Neither Salvatore nor Klinger would have testified that the appellant did not strike Michael Johnson. In fact, none of the witnesses who testified ever denied that the appellant struck Michael Johnson. The appellant's attorney admitted in closing argument that the appellant did, in fact, strike Michael Johnson.
Lisa Klinger was called as a defense witness during trial. Klinger testified that she and Pam Johnson were good friends. The appellant's trial attorney then attempted to initiate a line of questioning concerning a conversation that allegedly took place between Klinger and Pam Johnson where Johnson told Klinger "about all these lies she (Johnson) has told." (T. 628.) The prosecuting attorney objected to any testimony as to what Pam Johnson told Klinger because it would be hearsay. The trial court initially sustained the objection, but allowed appellant's counsel to call Pam Johnson back to the witness stand for the limited purpose of asking her whether she denied making the inconsistent statements alleged by Klinger. Although appellant's counsel did in fact call Pam Johnson back to the witness stand, and questioned her as to whether she had told Klinger she intended to lie to investigators and at trial,[2] appellant's counsel subsequently chose not to call Klinger back to the witness stand to use her testimony for impeachment purposes. Appellant's counsel made a strategic decision not to use Klinger as a witness to impeach Pam Johnson's testimony or to show that it was biased; he was not foreclosed from doing so by the trial court. Therefore, appellant's contention that he was denied his right to confront a witness against him by use of extrinsic evidence, which would have disclosed bias or prejudice as it relates to the testimony of Lisa Klinger is without merit.
At trial the appellant presented the testimony of a Robert Salvatore during his defense case in chief. Salvatore was employed by the Cleveland Police Department as an institutional guard. He described his duties as acting as a jailer and booker.
Salvatore's testimony at trial was limited solely to relating an incident he observed while the appellant was being booked, wherein the appellant offered the booking officer, Detective Henry Veverka, a pair of gloves which he claimed were the ones he was wearing on the morning of the assault. Salvatore testified that Detective Veverka refused to accept the gloves. Presumably, Detective Veverka believed that the fact that a number of days had already passed since the day of the incident made it unlikely that the gloves that were being offered to him by the appellant were the same gloves that were used in the assault of Michael Johnson. The reason that the issue of the identity of the gloves was important was that the indictment alleged that the appellant had used "sap gloves" in his assault of Michael Johnson. Sap gloves are gloves which have a pocket into which a weighted object, such as coins or pellets, can be inserted to increase the weight of the glove with a corresponding increase in the punching power of the person wearing the gloves. Although the appellant admitted to the investigating officers that he was wearing black gloves on the morning of the incident, he denied that they were sap gloves. Rather, the appellant maintained that they were regular, non-weighted gloves he used during the course of his duties as a bouncer at the Country Club Bar.
The day after Salvatore's testimony at trial, counsel for appellant informed the trial court that Salvatore had contacted the appellant at his home with information that he had heard Lisa Klinger and Pam Johnson in the hallway outside of the courtroom discussing how they were both being threatened with physical harm by the victim, Michael Johns, on, if they did not testify in a manner consistent with his testimony. The appellant's counsel informed the court that the appellant had tape-recorded his conversation with Salvatore, with Salvatore's permission. The prosecutor objected to admission of Salvatore's testimony as hearsay. The trial court, at this point, conducted a voir dire examination of the audio tape of the conversation and allowed both the prosecutor and appellant's attorney to question Salvatore on the issue of the conversation he allegedly overheard between Pam Johnson and Klinger, outside of the presence of the jury. After concluding this examination of the audio tape and Salvatore, the trial court concluded that this new testimony of Salvatore was "totally unreliable." (T. 791.) The trial court ruled that Salvatore would not be permitted to revisit the witness stand for the purpose of relaying to the jury the details of the conversation that he allegedly overheard between Klinger and Pam Johnson. The trial court expressed concerns that the appellant had repeatedly attempted to contact Salvatore, although he implied to the court that it was Salvatore who had initiated the contact, and that Salvatore never informed any of the police officers assigned to the case of the events to which he was going to testify. The admission of evidence rests within the sound discretion of the trial court and the record does not indicate that the court's attitude herein prohibiting the supplemental testimony of Robert Salvatore was arbitrary, unreasonable or unconscionable. Hence, we cannot conclude that the trial court abused its discretion in excluding this testimony.
Finally, the appellant argues that the trial court wrongfully denied him the right to present as a witness the emergency room physician who treated Michael Johnson on the morning of the incident. The physician would have purportedly testified that the injuries testified to by Johnson at trial were not consistent with his observations or with the findings documented in his medical report.
It does appear to this court, from a review of the transcript, that the trial court misunderstood the nature of the testimony that the physician would have purportedly offered. The trial court seemed to believe that the appellant would call the physician for the purpose of allowing him to repudiate the contents of his medical report. What the appellant was actually requesting was that he be allowed to call the physician so that the physician could testify that the injuries to which Michael Johnson testified to at trial were exaggerated, and were never disclosed to emergency room personnel or documented in the medical report. Yet, this misunderstanding by the trial court is not relevant because the trial court nonetheless indicated that it would permit the appellant to call the emergency room physician as a witness. This court can find no evidence of the "circumspect threat of prosecution" that the trial court allegedly hinted at if the doctor were to repudiate the contents of the medical report in the transcript of the trial proceedings. (Appellant's brief at p. 14.) Presumably, the doctor would have testified truthfully and there would have been no need for him to fear prosecution for perjury. Additionally, the medical report in question was entered into evidence at trial and was available for use by appellant's counsel in his cross-examination of Michael Johnson.
Accordingly, the second assignment of error is not well taken.
Appellant's third assignment of error states:
 III. THE DEFENDANT WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW; AN IMPARTIAL JURY; AND THE ASSISTANCE OF COUNSEL, ALL OF WHICH ARE GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
This assignment of error actually encompasses at least five separate and distinct legal arguments, all of which relate to ineffective assistance of counsel. We will address the issues in the order and form in which they were presented in the appellant's brief.
 A. Ineffective Assistance of Counsel
In order to substantiate a claim for ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,State v. Brooks (1986), 25 Ohio St.3d 144.
In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith
(1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsels essential duties to his client. Next, and analytically separate from the question of whether the defendants Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. * * *
 Even assuming counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, (1981), 449 U.S. 361, 364-365." Strickland, supra, at 691. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *
 Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that were it not for counsel's errors, the results of the trial would have been different.
State v. Bradley, supra, at 141, 142.
In reviewing the case sub judice, it cannot be said as a matter of law that, but for the performance of appellant's trial counsel, there exists a reasonable probability that the results of the trial would have been different. Specifically, appellant maintains that the ineffective assistance of his trial counsel resulted in the appellant's inability to testify at trial, thus compromising his defense strategy. Apparently, appellant's counsel mistakenly believed that evidence of the appellant's prior convictions would not be admissible if the appellant chose to testify at trial.
Initially, it should be noted that midway through trial the trial court granted the appellant's oral motion to act as his own co-counsel. Appellant had communicated to the trial court, outside of the presence of the jury, that he was not happy with the defense strategy that was being pursued by his counsel. After he was made co-counsel, appellant was able to ask questions of witnesses. The trial court even required that Detective Veverka, who had already completed his testimony, be called back to the witness stand for the purpose of additional cross-examination by the appellant. Any decision that was made concerning whether or not the appellant would testify at trial was necessarily made with the input and the consent of the appellant. If the appellant wished to take the stand in contravention of his counsels advice, he needed only to inform the trial court of his desire to do so.
The stated reason that the appellant did not testify in his own defense was that he was concerned that he would be unfairly prejudiced if the jurors were to learn of his 1972 conviction for murder. Given the fact that the jury had already learned of the victim's lengthy criminal record during the preceding three years in which he had been an adult, this concern may have been exaggerated.
The trial court ruled that under Evid.R. 609 (B), evidence of the conviction was admissible because the appellant's parole for the 1972 conviction was not terminated until January 14, 1988, which was less than ten years prior to the date of trial. The appellant did not contest the accuracy of the records indicating his release date from his parole for the 1972 conviction. The appellant does not state with any specificity how his trial strategy was affected by the trial court's ruling on the admission of evidence of the prior conviction during the course of the trial. Certainly, the date of his release from parole should have been known to the appellant prior to trial. The appellant also fails to state the nature of his testimony which, if it had been believed by the jury, would have constituted a defense to the charge of felonious assault.[3] At sentencing the trial court indicated that appellant had a conviction for a felony firearms possession in 1993. Pursuant to Evid.R. 602(A)(2) this conviction also would. have been admissible if the appellant had testified.
The appellant has failed to demonstrate how his counsel's ineffective assistance led to the trial court's ruling that evidence of his 1972 conviction would be admissible if the appellant were to testify, or that the timing of the ruling prejudiced his ability to present a complete defense to the charges against him.
 B. Failure to Raise Defense of Another as an Affirmative Defense
None of the witnesses who testified at trial stated that Michael Johnson was in any way harming Pam Johnson at the time that the appellant arrived at the Johnson home. The testimony throughout the trial was consistent that Michael Johnson put his sister, Pam Johnson, in a bear hug in order to restrain her and to prevent her from further striking him, but that he at no time punched, throttled, or otherwise attempted to injure his sister. The affirmative defense of defense of another is available to one who uses appropriate force when coming to the aid of another, if the other person was privileged to use such force. See, State v.Wenger (1979), 58 Ohio St.2d 336. One who uses force to intervene in a conflict on behalf of another may not invoke a privilege of self-defense if the person defended was the aggressor in the conflict. Wenger, supra; Ellis v. State (1992), 64 Ohio St.3d 391,394.
In the case sub judice, the testimony of all of the witnesses to the conflict was that Pam Johnson was the aggressor and her brother, Michael Johnson, was the victim. Therefore, the appellant was not entitled to use force against Michael Johnson in defense of Pam Johnson. Thus, even if the appellant's counsel had presented a defense of defense of another, and even if there was evidence presented that the appellant struck Michael Johnson repeatedly because he believed it was reasonably necessary to do so to protect Pam Johnson, the appellant would not have been entitled to a jury instruction on this affirmative defense because all of the evidence in the case pointed to Pam Johnson as the aggressor in the conflict into which appellant intervened.
It is interesting to note here that the court in Ellis
distinguished those cases where a third party intervenes on behalf of an aggressor merely in an attempt to stop an altercation, from those cases where actual force is used against the aggressor's victim. Supra at 394. In this case all of the evidence confirms, and the appellant admits, that rather than attempting to separate the feuding siblings, he instead struck Michael Johnson repeatedly, causing him physical harm.
 C. Failure to Request an Instruction on the Lesser Included Offense of Aggravated Assault, and Assault.
Appellant contends that the failure of his trial counsel to request a jury instruction on either aggravated assault or assault, both lesser included offenses of felonious assault, amounted to ineffective assistance of counsel. In State v. Griffin (1996),74 Ohio St.3d 332, the court held that "[f]ailure to request instructions on lesser included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel," citing State v. Clayton (1980), 62 Ohio St.2d 45, 16 O.O.3d 35,certiorari denied (1980), 449 U.S. 879.
In the case instanter, appellant's trial counsel not only failed to request a jury instruction on a lesser included offense, he affirmatively requested on the record that no lesser included instruction be given:
 Appellant's Counsel: The defendant requests that no lesser included be in your charge.
 The Court: I'm not going to do a lesser included.
Appellant's Counsel: That's what I asked for.
(Tr. at 850.)
At the time appellant's trial counsel made this request, appellant was acting as his own co-counsel and was presumably privy to the decision. Therefore, it is clear to this court that the decision not to request a lesser included offense jury instruction was a matter of trial strategy and, therefore, does not amount to ineffective assistance of counsel.
 D. Failure to Request a Specific Instruction on the Charge of Felonious Assault.
The appellant maintains that he was prejudiced by his trial counsel's failure to request a specific instruction on the charge of felonious assault because the failure to request such a specific instruction has made it harder for the appellant to argue on appeal that the jury verdict was against the manifest weight of the evidence. Theoretically, if a specific instruction had been requested, and the trial court agreed to give it, the appellant would have learned whether the jury believed that he had violated R.C. 2903.11 by causing serious physical harm to Michael Johnson, or whether they believed that he had caused physical harm to Michael Johnson by use of a dangerous ordnance. The jury might have also indicated that they believed that the appellant both caused serious physical harm, and used a dangerous ordnance in his assault upon Michael Johnson.
The overwhelming weight of the evidence at trial tended to indicate both that the appellant used sap gloves as a deadly weapon in his assault upon Michael Johnson, and that Michael Johnson sustained serious physical injury. Thus, there was no prejudice to the appellant by his counsel's failure to request a specific instruction on felonious assault.
Although the trial court granted appellant's request at trial to call the emergency room physician as a witness to dispute the seriousness of the victim's injury, the appellant decided not to use the physician as a witness. The appellant presented no other witnesses who disputed the seriousness of the appellant's injuries.
Because there is no evidence that the failure to request a specific jury instruction on the charge of felonious assault had any effect on the judgment, or on the instant appeal, the appellant's claim that this failure rendered his legal assistance at trial ineffective is without merit.
 E. The Defendant is Guaranteed an Impartial Jury by the Sixth Amendment to the United States Constitution.
The appellant contends that the failure of the appellant's trial counsel to object to the presence on the jury of a police officer resulted in him being denied his Sixth Amendment right to an impartial jury. The appellant does not specify whether the juror in question should have been removed for cause or whether appellant's counsel should have used a peremptory challenge to have the juror removed. The appellant speculates, without any actual evidence, that the juror in question "probably answered inquiries from other jurors that the failure to testify was because the defendant had a prior conviction." (Appellant's brief at p. 23.)
During voir dire by the trial court, the juror in question stated that he was "predisposed to believe a police officer." (T. at 36.) Later in an answer to a question from appellant's counsel, the juror stated "[b]asically I'm with the cops. That's how I feel." (T. at 110.) The juror did answer in the affirmative on more than one occasion when asked if he could be objective to both sides during the trial. (T. at 35, 37.) Although the decision by the appellant's trial counsel not to excuse this particular juror may have been somewhat unusual, it does not amount to ineffective assistance of counsel.
Initially, this court observes that the central issue of credibility that was decided by the jury in this case did not involve assessing the trustworthiness of the appellant vis-a-vis that of a police officer. The appellant did not even testify at trial. The investigating police officer, Detective Henry Veverka, was not a witness to the assault and did not purport to have firsthand information. The jury simply needed to decide whether the testimony of the victim, as well as the testimony of the numerous other witnesses to the assault who testified at trial, was credible.
R.C. 2313.42(J) states that it is good cause for a challenge to a juror where "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." In the present case, the juror in question expressly stated that he could be fair and impartial and that he would listen to evidence from both sides before reaching any conclusion:
 THE COURT: Okay. Now can you think of a situation where a police officer * * * may be involved in a trial, and you could listen to both sides before you arrived at a decision?
JUROR: Oh, yes, ma'am.
THE COURT: Can you do that?
JUROR: Yes, ma'am.
 THE COURT: And you understand that the State may put on their side, and if the defense decided to, or chose to, they could put on a side, and we would not not want you to come to any conclusion until you've heard everything; can you do that?
JUROR: Oh, yes, ma'am.
(T. at 37.)
R.C. 2945.25(B) states:
 No person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror * * *, that he will render an impartial verdict according to the law and the evidence submitted to the jury at trial. See also, State v. Gleason (1989), 65 Ohio App.3d 206, 208.
The trial court and appellant's trial counsel were both satisfied in the instant case that the juror in question could be impartial and render a verdict according to the evidence presented at trial. There is absolutely no evidence in the record that this juror showed any bias or in any way unduly influenced the deliberations of the other jurors. Therefore, the appellant's counsel's acceptance of a juror who also happened to be a police officer, did not constitute ineffective assistance of counsel and the appellant was not deprived of his right to an impartial jury by the inclusion of a police officer on the jury.
Accordingly, the appellant's third assignment of error is not well taken.
Appellant's fourth assignment of error states:
 IV. THE FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City of Cleveland
(1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169, State v. Montes (1993), 92 Ohio App.3d 539. In State v. Martin (1983), 20 Ohio App.3d 172, 20 OBR 215, the court set forth the test to be utilized in reviewing whether a verdict is was against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Martin, supra, 20 Ohio App.3d 175.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact. In State v. Thompson (Apr. 23, 1998). Cuyahoga App. No. 72044, unreported, this court stated:
 The fact finder, being the jury (in this case) or the trial judge (in a waiver), occupies a superior position in determining credibility. The fact finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact finder. Id. At 28.
The appellant herein was convicted of felonious assault in violation of R.C. 2903.11, which provides:
(A) No person shall knowingly:
(1) cause serious physical harm to another * * *;
 (2) cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in Section 2923.11 of the Revised Code.
In addition to the testimony of Michael Johnson, Pam Johnson and Betty Johnson, the jury heard first-hand evidence concerning the events on the morning in question from Lisa Lewis, Deborah Hajdin and Robert Hajdin. Lewis was the girlfriend of the victim on the day of the underlying occurrence and at the time of the trial. The Hajdins were neighbors of Betty Johnson, who had been at the Country Club Bar on the night prior to the incident. The Hajdins also witnessed the entire incident underlying this case from the time of the yelling back and forth between Michael Johnson and Pamela Johnson until the time that the appellant intervened and struck Michael Johnson repeatedly. It was Robert Hajdin who drove Michael Johnson to the hospital after he refused treatment from the emergency medical squad. The testimony of all the eye witnesses was fairly consistent as to the operative facts underlying the felonious assault, and was apparently believed by the jury. There was no testimony from anyone who saw Michael Johnson provoke the appellant to strike him. There was also uncontradicted testimony as to the seriousness of the injuries sustained, including a number of photographs of Michael Johnson which were entered into evidence.
After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Thus, the jury's verdict was not against the manifest weight of the evidence.
Appellant's fourth assignment of error is not well taken.
In addition to the assignment of errors presented in the brief of the appellant prepared by his appellate counsel, the appellant presented two additional assignment of errors in his pro se brief, which was filed with leave of the court on October 7, 1998. The appellee brief, which was filed on November 25, 1998, fails to address any of these additional assignment of errors.
The first additional assignment of error, which was labeled "Assignment of Error No. 5", states:
 THAT THE DEFENDANT WAS SENTENCED USING INAPPROPRIATE AND UNFOUNDED FACTS THAT WERE NEVER BEFORE THE JURY NOR FOR WHICH THE DEFENDANT WAS EVER INDICTED FOR AS ALLOWED AND REQUIRED BY BOTH THE OHIO AND THE U.S. CONSTITUTIONS.
During the sentencing phase of trial, the trial court made reference to the fact that it found disturbing much of the conduct that surrounded this trial. The trial court apparently believed that the appellant was responsible for rubbing motor oil on Pam Johnson after the incident to make it look like she had been badly bruised by her brother; which is precisely what Pam Johnson testified had happened. The trial court also came to believe that the appellant was responsible for suborning perjury from Robert Salvatore and a Cleveland police officer, Stanley Hart, who testified that he witnessed bruises on Pam Johnson shortly after the morning of the assault.
The sentence imposed upon the appellant was within the guidelines for felonious assault as provided in R.C. 2929.14 (A)(2). The transcript of the sentencing indicates that the trial court. considered the relevant seriousness and recidivism factors as outlined in R.C. 2929.12 before pronouncing sentence. The defendant's behavior throughout the course of the trial was relevant to the sentencing in that it is probative of his prospects for rehabilitation. See, State v. O'Dell (1989), 45 Ohio St.3d 140. In O'Dell, the Court reasoned that considering the behavior of a defendant throughout the trial process in imposing sentence was not impermissible as "[t]he applicable statutes do not preclude the sentencing court from considering serious misbehavior as observed by the sentencing judge during trial." Id. at 147. The trial court evidently believed, and the record does not contradict this belief, that the appellant engaged in serious misbehavior throughout the course of the trial. It was not an abuse of discretion for the trial court to consider this behavior in imposing a sentence within the guidelines provided in R.C.2929.14(a)(2)
Accordingly, appellant's ninth assignment of error is overruled.
The appellant's sixth assignment of error states:
PROSECUTORIAL MISCONDUCT.
The appellant maintains that the prosecution knowingly permitted false testimony at his trial, and actively misled the court.
Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovich (1987), 33 Ohio St.3d 19; State v. Papp (1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266;State v. Dixon (March 13, 1997), Cuyahoga App. No. 68338, unreported. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209, 219. An accused is guaranteed a fair trial, not a perfect one. In addition, should a defendant fail to object to the prosecutor's allegedly improper comments at trial pursuant to Crim.R. 52(B), the comments in question must rise to the level of plain error affecting the substantial rights of the defendant before this court can take notice of the error. Under a plain error analysis, reversal of a conviction is appropriate only if it can be said that, but for the alleged error, the result of the trial would clearly have been different. State v. Kent (1980),68 Ohio App.2d 151; State v. Parker (Oct. 5, 1995), Cuyahoga App. No. 68156, unreported.
Most of the alleged misconduct asserted by the appellant, even if taken as true, involves ancillary issues not germane to the ultimate issue of fact. The only "evidence" of any prosecutorial misconduct in the present case is the self-serving and conclusory assertions of the appellant. The record contains no actual evidence of any prosecutorial misconduct which affected the substantial rights of the defendant in any manner.
Therefore, the appellant's sixth assignment of error is not well taken.
Judgment affirmed in part, as to Assignments of Error Nos. 2, 3, 4, 5 and 6, and reversed and remanded in part, as to Assignment of Error No. 1, so that trial court may enter an order vacating the four year sentence on the repeat violent offender specification consistent with this opinion.
Judgment affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
Costs to be divided equally between plaintiff-appellee and defendant-appellant.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, Judge, PATTON. P.J., and ROCCO. J., CONCUR.
[1] In the Law and Argument section of its brief, appellee citesexclusively to the case of State ex rel. Askew v. Goldhart (1996),75 Ohio St.3d 608 for both Assignments of Error No. 1 and No. 2. This court has reviewed Askew and finds that it has absolutely no application to the propositions of law for which it is cited.
[2] Appellant's counsel asked Pam Johnson whether she ever told Klinger that she was "going to claim that these pictures were fake." Johnson answered "[y]es." (T. 694-695.) Appellant's counsel then attempted to ask Johnson whether she had ever told Klinger that her brother, Michael Johnson, had attempted to molest her son. (T. 695.) The trial court sustained the prosecutor's objection to this line of questioning for obvious reasons. Appellant's counsel had no further questions of Pam Johnson.
[3] See, discussion infra of "defense of another" and lesser included offenses of felonious assault.